ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-ESPECIAL

| MARIANGELIE CRUZ MERCED<br><br>Apelante<br><br>v.<br><br>KELVIN BONILLA DE LOS SANTOS<br><br>Apelado | KLAN202300591 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón, Sala de Familia y Menores<br><br>Caso Núm.:<br>BY2022RF00873<br><br>Sobre:<br>Alimentos |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

*Martínez Cordero, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 14 de diciembre de 2023.

Comparece la señora Mariangelie Cruz Merced (en adelante, apelante y/o señora Cruz Merced) para solicitarnos la revisión de la *Sentencia* emitida y notificada el 31 de marzo de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI), mediante la cual se impuso una pensión alimentaria a favor de los tres (3) menores de edad, hijos de las partes, sin incluir en el cómputo de la misma, una alegada partida por concepto de gasto de vivienda, como gasto suplementario.[1]

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

## I

El 16 de mayo de 2022, la apelante presentó una *Petición* de Alimentos ante el foro primario.[2] En la *Petición* adujo que las partes son los progenitores de los siguientes tres (3) menores de edad: K.G.B.C., K.Z.B.C. y K.Y.B.C (en adelante, menores alimentistas) y

---

[1] Apéndice de la apelante, a las págs. 25-26. Véase Sistema Unificado de Manejo y Administración de Casos (SUMAC) a la entrada 241.
[2] Apéndice de la apelante, a las págs. 1-4.

Número Identificador

SEN2023_____

solicitó que se estableciera una pensión alimentaria a favor de estos.[3]

Consecuentemente, el 3 de junio de 2022, se celebró una *Vista sobre Fijación de Pensión Alimentaria* ante la licenciada Judit Rodríguez Morales, Examinadora de Pensiones Alimentarias (en adelante, EPA).[4] Como parte de las incidencias acaecidas en la vista ante la EPA, y según surge de los autos, el 3 de junio de 2022[5], la EPA rindió un *Acta*.[6] De dicha *Acta* se desprende que la EPA examinó los ingresos de las partes, así como las necesidades de los menores alimentistas. A esa fecha, la apelante ya había presentado su *Planilla de Información Personal y Económica* (en adelante, PIPE), que fue examinada por la EPA[7], mientras que el señor Kelvin Bonilla De Los Santos (en adelante, apelado y/o señor Bonilla De Los Santos), no había presentado la suya. Producto de la vista celebrada, y conforme surge del *Acta*, la EPA consignó las siguientes trece (13) determinaciones de hechos preliminares:

1. El Sr. Kelvin Bonilla De Los Santos y la Sra. Mariangelie Cruz Merced son los padres de los menores: K.G.B.C., de 10 años, K.Z.B.C., de 6 años, y K.Y.B.C., de 4 años.
2. Los menores residen bajo la custodia de su madre en Toa Baja, Puerto Rico.
3. El Sr. Kelvin Bonilla De Los Santos, trabaja como gruero por cuenta propia; de acuerdo con su testimonio devenga un ingreso neto mensual aproximado de $1,516.66.
4. La Sra. Mariangelie Cruz Merced, trabaja a tiempo parcial como técnica de uñas de AZ Salón en Plaza del Sol, de acuerdo con su testimonio devenga un ingreso neto mensual aproximado de $953.33. Para efectos del por ciento de su participación en la pensión de los menores, se le imputó el ingreso mínimo federal, a razón de 40 horas semanales, para un total de $1,160.53 mensual.
5. La residencia donde habita la promovente y los menores paga de $800.00 mensuales de renta. Residen allí 6 personas. Sin embargo, este gasto

---

[3] *Id.*
[4] *Id.*, a las págs. 5-7.
[5] El *Acta* fue suscrita por la EPA con fecha del 4 de junio de 2022, pero de los autos ante el TPI en el SUMAC surge que fue presentada el 3 de junio de 2022, a las 11:51:51 am, a la Entrada 9.
[6] *Id.*
[7] La PIPE de la apelante fue presentada el 2 de junio de 2022. Apéndice de la apelante, a las págs. 40-48.

no fue considerado para el cómputo de la pensión alimenticia, ya que la promovente testificó que la vivienda la pagaba su esposo y ella ayudaba con el pago. No se presentó evidencia del pago de la vivienda y tampoco de la aportación realizada. La promovente alegó que su esposo le paga en efectivo, ella deposita el dinero en su cuenta y luego para la renta por ATH Móvil desde su teléfono. Indicó que intenta aportar $300.00 mensuales. La licenciada Rivera objetó que no se incluyera el gasto de vivienda. Se informó que luego de que se presentara la prueba de su aportación y la de su esposo, según los estados de cuenta y las transacciones registradas en ath móvil, así como el contrato de arrendamiento, podríamos evaluar la totalidad de la misma y hacer las recomendaciones que procedan.

6. Los menores se benefician de educación pública gratuita.

7. El señor Bonilla De Los Santos sufragará el 57% de los gastos escolares.

8. Los menores se benefician del plan médico del gobierno.

9. El señor Bonilla De Los Santos sufragará el 57% de los gastos médicos no cubiertos.

10. Conforme a las *Guías Mandatorias para Computar Pensiones Alimenticias en Puerto Rico*, Reglamento Núm. 8529 del 30 de octubre de 2014, al Sr. Kevin Bonilla De Los Santos le corresponde pagar $441.31 de pensión alimenticia básica. Los gastos suplementarios serán sufragados al porciento correspondiente.

11. La pensión total asciende a $441.31 mensuales. Dicha cantidad será pagada a razón de $204.00 bisemanales, los sábados alternos, mediante ATH Móvil, depósito a cuenta bancaria, cheque o giro, directamente a la señora Cruz Merced, efectivo el 4 de junio de 2022.

12. La deuda por retroactividad será calculada en la vista final de alimentos.

13. No se solicitaron honorarios durante la vista; de acuerdo con las vistas que se celebren, se recomendarán con la pensión final.[8]

Del *Acta* se desprende, además, que la EPA citó a las partes para una continuación de vista que debía efectuarse el 8 de agosto de 2022.[9]

En atención al *Acta*, el 3 de junio de 2022 el foro primario emitió *Orden de Pensión Alimentaria Provisional*.[10] Mediante esta *Orden*, el foro *a quo* estableció, en síntesis, una pensión alimentaria

---

[8] Apéndice de la apelante, a las págs. 6-7.
[9] *Id.,* a la pág. 7.
[10] Véase SUMAC, a la entrada 13.

provisional. En ella ordenó al apelado a pagar: (i) la suma de $204.00 dólares por concepto de pensión alimentaria, con frecuencia bisemanal; y, (ii) el 57% de los gastos escolares y de los gastos médicos no cubiertos.

Previo a que la EPA presentara la aludida *Acta* en el Sistema Unificado de Manejo y Administración de Casos (en adelante, SUMAC), y más aún, previo a que el foro *a quo* emitiera *la Orden de Pensión Alimentaria Provisional*, se desprende de los autos que, el 3 de junio de 2022, la apelante presentó una *Moción Solicitando Reconsideración y Solicitud de Honorarios de Abogado*.[11] Abona a lo anterior, que, presentada en el SUMAC el *Acta* y notificada la *Orden de Pensión Alimentaria Provisional*, el 3 de junio de 2022, la apelante presentó una *Solicitud de Determinaciones de Hechos Adicionales*.[12] Sobre esta última, mediante *Orden* en esa misma fecha, el foro primario, refirió el asunto a la atención de la EPA.[13]

En respuesta, el 13 de junio de 2022, la EPA rindió y presentó un *Acta*.[14] Allí, en lo pertinente, expresó en torno a la solicitud de reconsideración que "[...] esta solicitud no procede en derecho, por haber sido presentada a destiempo".[15] Empero, expresó que la apelante: "[...] solicita se reconsidere el hecho de que no se incluyó en el cómputo de la pensión provisional un gasto de vivienda que no fue probado".[16] Expresó, además, que: "Se apercibió a la parte que de presentarse prueba fehaciente de que ella realiza el pago de la vivienda, se incluiría en la pensión final".[17] En resumidas cuentas, la EPA recomendó al juez que presidía los procedimientos en este caso, que no acogiera la reconsideración solicitada. En relación con la solicitud de determinaciones de hechos adicionales, recomendó

---

[11] Apéndice de la apelante, a las págs. 8-9.
[12] *Id.*, a las págs. 10-11.
[13] Véase SUMAC, a la entrada 15.
[14] Apéndice de la apelante, a las págs. 12-13.
[15] *Id.,* a la pág. 12.
[16] *Id.*
[17] *Id.*

igual curso de acción. Concluyó que los hechos probados utilizados para la recomendación provisional y acogidos por la primera instancia judicial fueron los únicos que se incluyeron en las determinaciones provisionales.[18] Destacó que no se consideran hechos probados las alegaciones de las partes, ni que todo lo que se manifiesta en la vista se incluye en las determinaciones de hechos; así como que, ninguno de los hechos cuya inclusión se solicitó mediante el escrito presentado por la apelante, cambiarían la recomendación de pensión alimentaria provisional emitida.[19]

De ahí, mediante *Orden* emitida el 13 de junio de 2022, el foro primario acogió la recomendación emitida por la EPA, es decir, denegó la solicitud de reconsideración, así como la solicitud de determinaciones de hechos adicionales presentada por la apelante.[20] Así las cosas, el caso atravesó por un descubrimiento de prueba en el cual el foro primario tuvo que intervenir en varias ocasiones tras sobrevenir controversias entre las partes.

Superados los asuntos antes descritos, el 6 de marzo de 2023, se celebró la *Vista Final de Alimentos* ante la EPA.[21] Como parte de las incidencias acaecidas en la vista ante la EPA, y según surge de los autos, el 31 de marzo de 2023, la EPA rindió un *Informe de la Examinadora de Pensiones Alimentarias.*[22] Conforme surge de los autos, en la *Vista Final*, la EPA recibió prueba documental, la cual fue considerada. También, recibió prueba testimonial, que consistió en el testimonio de las partes, sobre la cual se ponderó la credibilidad que le mereció.[23] Producto de la *Vista Final* celebrada, y conforme surge del *Informe de la Examinadora de Pensiones Alimentarias,* la EPA consignó veinte (20) determinaciones de hechos, conclusiones de derecho y emitió una recomendación al juez

---

[18] *Id.*, a la pág. 13.
[19] *Id.*
[20] Véase SUMAC, a la entrada 17.
[21] Apéndice de la apelante, a la pág. 14.
[22] Apéndice de la apelante, a las págs. 14-24.
[23] *Id.,* a la pág. 14.

que preside los procedimientos en este caso. Las determinaciones de hechos emitidas fueron las siguientes:

1. El Sr. Kelvin Bonilla De Los Santos y la Sra. Mariangelie Cruz Merced son los padres de los menores: K.G.B.C., de 11 años; K.Z.B.C., de 7 años y K.Y.B.C., de 5 años.

2. Los menores residen bajo la custodia de su madre en el estado de Florida, EU.

3. El Sr. Kelvin Bonilla De Los Santos, trabaja como gruero por cuenta propia. Además, trabajó como chofer de camiones, mientras su grúa estuvo averiada. De acuerdo con los estados bancarios presentados, que cubren los meses de mayo de 2022 a enero de 2023, su ingreso promedio mensual es de $1,568.24.

4. El señor Bonilla declaró que anteriormente vendía ganado, pero no era un negocio de volumen. Aseguró que la finca donde tenía el ganado no era suya. Señaló que nunca vendió cerdos u otro animal. Surge de los estados bancarios alguna transacción que identificó como ganancia por la venta del último ganado vendido. Ese ingreso fue imputado en el mes en que se recibió. La prueba que se recibió sobre el ganado consta de fotografías de redes sociales del año 2021; en algunas de las fotografías no se puede identificar la fecha específica en que se publicaron.

5. Se presentaron fotografías de redes sociales en las que se promovía el arrendamiento de un vehículo de motor para transporte de ganado. Surgió durante la vista que ese vehículo mencionado fue reposeído por el banco, ya que no se cumplió con el acuerdo de pago suscrito.

6. La Sra. Mariangelie Cruz Merced trabaja a tiempo completo como empacadora en TNT Supplements y, devenga un ingreso neto mensual de $1,57144 (sic).

7. En este caso fue necesario hacer varios cómputos de pensión alimentaria ya que hubo cambios de trabajo e ingresos de ambas partes.

8. Durante los meses de mayo de 2022 a octubre de 2022, el ingreso de la señora Cruz, según imputado de acuerdo con sus estados bancarios, fue de $3,083.48 mensual. En noviembre y diciembre de 2022, el ingreso mensual de la señora Cruz fue de $1,799.13. El ingreso actual de la señora Cruz es de $1,571.44 mensual.

9. La residencia donde habita la promovente y los menores paga un canon de arrendamiento. De acuerdo con el testimonio de la promovente, residen allí 6 personas. Sin embargo, este gasto no fue considerado para el cómputo de la pensión alimentaria, ya que la promovente testificó que la vivienda era un pago que se compartía con su esposo. Aunque se presentaron recibos del pago de una vivienda, no se presentó evidencia de que el pago surgiera de un estado bancario suyo, sino de su esposo; tampoco de la aportación realizada por ella.

10. Uno de los menores se beneficia de educación pública gratuita.

11. El menor en etapa prescolar participa de un cuido (Kids of Distinction Learning Center). Al momento y

hasta julio de 2023, el gasto de cuido demostrado es de $101.83 mensual. Este gasto fue contemplado en el cómputo de la pensión alimentaria, en los meses de enero de 2023 a julio de 2023.

12. Durante parte del mes de octubre de 2022 y principios de noviembre de 2023, el menor participó del cuido Amazing Kids. El pago total satisfecho por la promovente por este cuido fue de $115.92. De esta cantidad, el señor Bonilla debe reembolsar el 47%.[24]

13. A partir de agosto de 2023, el menor que se encuentra en cuido, comenzará a estudiar en la escuela pública, por lo que el gasto de cuido será eliminado a partir de esa fecha.

14. Conforme a las *Guías Mandatorias para Computar Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 8529 del 30 de octubre de 2014, al Sr. Kevin Bonilla De Los Santos le corresponde pagar por los meses de mayo a octubre de 2022, una pensión alimentaria básica de $420.74 mensuales ($194.00 bisemanal), sin gastos suplementarios. Para este periodo, el señor Bonilla De Los Santos sufragará el 34% de los gastos escolares y de los gastos médicos no cubiertos.

15. Conforme a las *Guías Mandatorias para Computar Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 8529 del 30 de octubre de 2014, al Sr. Kevin Bonilla De Los Santos le corresponde pagar en noviembre 2022, hasta diciembre de 2022, una pensión alimentaria mensual básica de $449.29, y una pensión suplementaria de $47.51 por el gasto de cuido, para una pensión alimentaria total de $496.79 mensual ($299.00 bisemanal). Para este periodo, el señor Bonilla De Los Santos sufragará el 47% de los gastos escolares y de los gastos médicos no cubiertos.

16. Conforme a las *Guías Mandatorias para Computar Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 8529 del 30 de octubre de 2014, al Sr. Kevin Bonilla De Los Santos le corresponde pagar los meses de enero a julio de 2023, una pensión alimentaria mensual básica de $445.05 mensuales, y una pensión suplementaria de $50.86 por gasto de cuido, para una pensión alimentaria total de $495.91 mensual ($229.00 bisemanal). Para este periodo, el señor Bonilla De Los Santos sufragará el 50% de los gastos escolares y de los gastos médicos no cubiertos.

17. Conforme a las *Guías Mandatorias para Computar Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 8529 del 30 de octubre de 2014, al Sr. Kevin Bonilla De Los Santos le corresponde pagar, desde el 1 de agosto de 2023, una pensión alimentaria mensual básica de $445.05 ($205.05 bisemanal), sin gastos suplementarios. Para este periodo, el señor Bonilla De Los Santos sufragará el 50% de los gastos escolares y de los gastos médicos no cubiertos.

18. Los menores se benefician del plan médico del gobierno.

---

[24] En su Informe, la EPA incluyó la siguiente nota al calce: "Por tratarse de una cantidad que no es fija, se incluyó para el pago mediante reembolso y no en un cómputo mensual".

19. La pensión alimentaria será pagada bisemanalmente, los sábados alternos mediante ATH Móvil, depósito a cuenta bancaria, cheque o giro, directamente a la señora Cruz Merced, efectivo el 1 de abril de 2023.

20. La licenciada Rivera solicitó honorarios de abogado por la comparecencia a las vistas de alimentos. Esta Examinadora recomienda el pago por 3 vistas provechosas.[25]

A base de las determinaciones de hechos y conclusiones de derecho que fueron emitidas en el *Informe y Recomendaciones de la Examinadora de Pensiones Alimentarias,* producto de la *Vista Final,* la EPA emitió, en síntesis, las siguientes recomendaciones: (i) que se estableciera una pensión alimentaria de $194.00 dólares con frecuencia bisemanal para el periodo de mayo a octubre de 2022, así como, el 34% de los gastos escolares y gastos médicos no cubiertos en este periodo; (ii) que se estableciera una pensión alimentaria de $229.00 dólares, con frecuencia bisemanal, incluyendo una pensión alimentaria básica por $449.29 dólares y una suplementaria de $47.51 dólares, para cuido de menor alimentista para el periodo de noviembre a diciembre de 2022, y el 47% de los gastos escolares y gastos médicos no cubiertos en este periodo; (iii) que se estableciera una pensión alimentaria de $229.00 dólares, con frecuencia bisemanal, incluyendo una pensión alimentaria básica $445.05 dólares y una suplementaria de $50.86 dólares para cuido de menor alimentista para el periodo de enero a julio de 2023, y el 50% de los gastos escolares y gastos médicos no cubiertos para este periodo; **(iv) que a partir del 1 de agosto de 2023, se estableciera una pensión alimentaria de $205.05 dólares bisemanales, a ser pagada por el apelado a favor de los menores alimentistas;** (v) que se emitiera una orden para que el pago de la pensión alimentaria fuese en forma directa a la apelante; **(vi) que se emitiera una orden al apelado para que a partir del 1 de agosto de 2023 pague el 50% de los gastos escolares y de los**

---

[25] Apéndice de la apelante, a las págs. 14-17.

**gastos médicos no cubiertos, en un término de quince (15) días, previa presentación de evidencia;** (vii) que se emitiera una orden al apelado para que pague $375.38 dólares por concepto de retroactividad de la determinación de pensión alimentaria; (viii) que se determinara que los menores alimentistas se benefician del plan médico del Gobierno; (ix) que se determinara sobre la concesión y fijación de honorarios de abogado por la comparecencia a tres (3) vistas; y, (x) que se instruyera a las partes sobre informar cualquier cambio en dirección, patrono o salario que tengan, así como cualquier otro pronunciamiento.[26] En apoyo al *Acta* presentada, incluyó Hojas de Trabajo para Pensiones Alimentarias, formulario OAT-1310.[27]

De ahí, el 31 de marzo de 2023, el foro primario emitió la *Sentencia* apelada.[28] En ella, el tribunal *a quo* acogió todas las recomendaciones contenidas en el *Informe de la Examinadora de Pensiones Alimentarias,* por lo que la pensión alimentaria quedó establecida. Estableció, además, la cantidad de $250.00 dólares por concepto de honorarios de abogado.[29]

Inconforme, el 3 de abril de 2023, la apelante presentó escrito intitulado *Reconsideración.*[30] Adujo que entendía que el foro primario había errado: (i) al no imputar una partida para la vivienda de los menores alimentistas; así como (ii) en haber impuesto la suma de $250.00 dólares por concepto de honorarios de abogados tras haber sido el mismo uno extremadamente litigioso. En relación con el asunto que nos ocupa, la apelante adujo, en síntesis, que el foro primario erró en la apreciación de la prueba al omitir determinaciones de hecho de evidencia sustancial.[31] Esboza la apelante que, en la *Vista Final* declaró que el canon de

---

[26] Apéndice de la apelante, a las págs. 23-24.
[27] Véase SUMAC, a la entrada 240 (anejo).
[28] Apéndice de la apelante, a las págs. 25-26.
[29] *Id.,* a la pág. 26.
[30] *Id.,* a las págs. 27-31.
[31] *Id.,* a la pág. 28.

arrendamiento es de $1,772.00 dólares mensuales, de los cuales esta aporta $700.00 dólares. Explicó que le entrega el dinero a su esposo, quien hace el pago del canon de arrendamiento, desde su tarjeta de crédito, ya que están casados bajo el régimen económico de separación total de bienes.[32] Añadió que su testimonio nunca fue impugnado.

En respuesta, a la solicitud de *Reconsideración*, mediante *Orden* emitida el 3 de abril de 2023, el foro *a quo* determinó lo siguiente:

> Se refiere a la EPA para evaluación sobre la partida del canon de arrendamiento. En cuanto a los honorarios de abogados se aumentan a $1,000 pagaderos en el término de 90 días.[33]

Con este curso decisorio del foro primario, quedó atendida la segunda parte de la solicitud de *Reconsideración*, pero quedó pendiente la primera. Es decir, quedó pendiente lo relacionado a la negativa de la EPA a imputar una partida para la vivienda de los menores alimentistas.

Así las cosas, el 7 de mayo de 2023, la apelante presentó *Moción Solicitando Remedio Adecuado*.[34] Adujo que "lleva más de un mes esperando la determinación en reconsideración sobre el gasto de la vivienda de los menores".[35] En respuesta, mediante *Orden* emitida el 8 de mayo de 2023, el foro primario refirió el asunto a la EPA para su pronta atención.[36] De ahí, el 8 de mayo de 2023, la EPA ordenó al apelado a expresarse en torno a la solicitud de la apelante para que se incluyera gasto de vivienda en el cómputo de pensión alimentaria.[37]

En cumplimiento con lo ordenado, el 28 de mayo de 2023, el apelado presentó una *Moción en Cumplimiento de Orden,* mediante

---

[32] *Id.,* a las págs. 83-89.
[33] Véase SUMAC, a la entrada 243.
[34] *Id.,* a la entrada 244.
[35] *Id.*
[36] Véase SUMAC, a la entrada 245.
[37] *Id.,* a la entrada 246.

la cual se opuso a la solicitud de *Reconsideración*.[38] Arguyó que no existía error en la apreciación de la prueba según alegado por la apelante, pero sí ausencia total de prueba en concepto de pago de vivienda.[39] Adujo que lo único que probó o demostró la apelante fue que existía una vivienda con un contrato de arrendamiento[40], donde ella residía con sus hijos y su esposo, nada más.[41]

De ahí, la EPA, quien tenía el asunto referido por determinación del juez que preside los procedimientos, rindió y presentó un *Acta* el 26 de junio de 2023.[42] Allí, recomendó que la solicitud de *Reconsideración* fuese declarada No Ha Lugar. En apoyo a su recomendación, expuso lo siguiente:

> De acuerdo con la prueba presentada durante la vista del 6 de marzo de 2023, no encontramos razón para que se incluya el gasto de vivienda en este caso, ya que entendemos que no es cubierto ni en todo ni en parte por la señora Cruz. De los documentos presentados, específicamente, la identificación 3 de la promovente, surgen 5 recibos de pago[43], alegadamente de la vivienda, de los cuales 4 de ellos fueron pagados con una tarjeta de crédito que no es de la señora Cruz. Aclaramos que los recibos de pago varían en cantidad y ninguno es por la cantidad alegada del pago de vivienda. El único recibo que reconoció la señora Cruz que proviene de una cuenta suya, fue identificado como el pago de enero de 2023, sin embargo, no tiene fecha. Ya en la vista de pensión alimentaria provisional habíamos determinado no incluir el pago de vivienda, también por falta de prueba de pago y, porque el testimonio de la señora Cruz no nos mereció credibilidad, en cuanto a su aportación para el pago.[44]

Finalmente, mediante *Orden* emitida el 26 de junio de 2023[45], el foro primario resolvió el asunto que quedó pendiente en cuanto a la solicitud de *Reconsideración* presentada por la apelante. Mediante su dictamen, el tribunal *a quo* determinó lo siguiente:

---

[38] Apéndice de la apelante, a las págs. 32-36.
[39] *Id.,* a la pág. 34.
[40] *Id.,* a las págs. 54-77.
[41] *Id.*
[42] Apéndice de la apelante, a las págs. 37-38.
[43] *Id.,* a las págs. 78-82.
[44] *Id.,* a la pág. 37.
[45] Véase SUMAC, a la entrada 253.

"Acogida el Acta presentada por la Examinadora de Pensiones, se declara NO HA LUGAR la reconsideración".[46]

Inconforme aún, el 7 de julio de 2023, la apelante presentó un recurso de *Apelación*, en el cual esgrimió la comisión de un (1) error por el foro primario, a saber:

Erró el Tribunal de Primera Instancia al no imputar una partida de gasto suplementario, para el pago de la vivienda donde residen los menores, en detrimento del mejor bienestar de estos, y dem[o]strando la existencia de pasión, prejuicio, parcialidad o error manifiesto.

El 21 de julio de 2023, la apelante presentó una *Moción Informativa y en Solicitud de Añadir Documento al Apéndice*. Solicitó añadir un recibo del canon de arrendamiento al apéndice en la página 90. El 9 de agosto de 2023, mediante *Resolución* autorizamos incluir como parte del apéndice el documento presentado.

Igualmente, el 21 de julio de 2023, presentó la apelante *Moción Informativa y Solicitud de Reconsideración*. Esbozó que, conforme a la Regla 19 del Reglamento del Tribunal de Apelaciones[47], consideraba que el método de reproducción de la prueba oral más conveniente era la exposición estipulada de la prueba oral. Abundó que, la prueba pertinente al único error señalado se presentó durante una hora de la vista ante la EPA, mientras que las otras dos (2) horas y cincuenta y tres (53) minutos era prueba impertinente al error señalado. El *Proyecto de Exposición Narrativa de la Prueba Oral* fue anejado a dicha moción. En la misma *Resolución* antes mencionada, declaramos Ha Lugar la solicitud de reconsideración y autorizamos la presentación del aludido *Proyecto*.

Por su parte, el 18 de agosto de 2023 el apelado presentó, por derecho propio, una *Moción en Oposición a Recurso de Apelación*. Luego, el 11 de septiembre de 2023, el apelado presentó *Moción: Oposición a Narrativa*. Expuso que, la apelante solo presentó en la

---

[46] Apéndice de la apelante, a la pág. 39.
[47] 4 LPRA Ap. XXII-B, R. 19.

vista cinco (5) recibos del pago del canon de arrendamiento. Añadió que el monto a pagar del canon de arrendamiento no es el mismo en todos los recibos. Por último, mencionó que la apelante, en tres (3) ocasiones diferentes, expresó que aportaba un monto de dinero diferente.

Examinadas las mociones, el 13 de septiembre de 2023, mediante *Resolución* ordenamos a la apelante a presentar un proyecto de exposición narrativa de la prueba oral presentada y no solo de parte de esta. El 26 de septiembre de 2023, la apelante presentó una *Moción en Cumplimiento con Resolución 13 de septiembre de 2023*. A la luz de lo anterior, el 4 de octubre de 2023 el apelado presentó un escrito mediante el cual, en síntesis, solicitó que esta Curia diera por estipulada el *Proyecto de Exposición Narrativa de la Prueba Oral.* De ahí que, mediante *Resolución* del 6 de octubre de 2023, dimos por estipulado el *Proyecto de Exposición Narrativa de la Prueba Oral.*

A raíz de ello, el 31 de octubre de 2023, la apelante presentó su *Alegato Suplementario*. Por su parte, el 28 de noviembre de 2023, el apelado presentó una moción intitulada *Alegato,* entiéndase, alegato en oposición.

Contando con la comparecencia de ambas partes, procedemos a resolver la controversia ante nos.

**II**

**A. Recurso de Apelación**

La Regla 52.2(a) de las Reglas de Procedimiento Civil[48], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su

---

[48] 32 LPRA Ap. V, R. 52.2 (a).

incumplimiento es insubsanable.[49] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[50] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.[51]
> [...]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[52] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[53] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

### B. Pensión Alimentaria a Menores de Edad

El Artículo 590 del Código Civil de 2020 en adelante, Código Civil) expone los deberes y facultades que tienen los progenitores sobre el hijo sujeto a patria potestad: "[...] **(b) alimentarlo y proveerle lo necesario para su desarrollo y formación integral**; [...]".[54] Según, el Artículo 653 del Código Civil se entiende por alimentos lo siguiente:

> Se entiende por alimentos todo lo que es indispensable para el sustento, **la vivienda**, la vestimenta, la recreación y la asistencia médica de una persona, **según la posición social de su familia**.
> Cuando el alimentista es menor de edad, los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales.[55]

---

[49] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[50] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[51] 4 LPRA Ap. XXII-B, R. 13 (A).
[52] 32 LPRA Ap. V, R. 47.
[53] *Id.*
[54] 31 LPRA § 7242, Art. 590.
[55] 31 LPRA § 7531, Art. 653.

En lo que respecta a los gastos de la reclamación, el Artículo 656 del Código Civil dispone que: "Cuando el alimentista se vea compelido a acudir al tribunal o a iniciar un proceso administrativo para reclamar su derecho a los alimentos, la cuantía que se imponga al alimentante incluirá una partida razonable para sufragar los gastos del litigio y los honorarios de abogados".[56]

En lo que concierne a la cuantía de los alimentos del menor de edad, el Artículo 666 del Código Civil establece que se fija siguiendo los criterios dispuestos en la ley especial complementaria.[57] Sobre la modificación de la obligación, el Artículo 671 del Código Civil explica que:

> La cuantía de los alimentos se reduce o aumenta proporcionalmente según aumenten o disminuyan las necesidades del alimentista y los recursos del obligado. Cuando el alimentista es menor de edad [...], la cuantía se modifica únicamente cuando median cambios sustanciales que alteran significativamente las necesidades del alimentista y los recursos del alimentante.
> La modificación periódica de las pensiones de los menores de edad [...] se rige por la legislación especial complementaria.[58]

La doctrina jurídica ha establecido que, las determinaciones de alimentos y de custodia de menores de edad no constituyen propiamente cosa juzgada, ya que están sujetas a revisión judicial, en el TPI, si ocurre un cambio en las circunstancias que así lo justifique, siempre, claro está, tomando en consideración los mejores intereses y el bienestar de los menores.[59]

### C. Ley Núm. 5-1986

La Ley Orgánica de la Administración para el Sustento de Menores aborda la política pública del Gobierno de Puerto Rico de que los padres y madres o las personas legalmente obligadas

---

[56] 31 LPRA § 7534, Art. 656.
[57] 31 LPRA § 7562, Art. 666.
[58] 31 LPRA § 7567, Art. 671.
[59] *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998).

asuman la responsabilidad que tienen para con sus hijos.[60] A tales efectos, parte integral de la política pública es la de fortalecer los sistemas de determinación, recaudación y distribución de las pensiones alimenticias.[61] Aduce que, se declara política pública del Gobierno procurar que los padres y madres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes.[62]

Dicha ley en su Artículo 2 (4) define alimentante como: "Persona natural que por ley tenga la obligación de proveer alimentos, hogar seguro y cubierta de seguro médico".[63] El mismo artículo en su inciso (6) define alimentista como:

> Persona natural que por ley tiene derecho a recibir alimentos, hogar seguro o cubierta de seguro médico. Incluye cualquier agencia del Estado Libre Asociado de Puerto Rico o de cualquier entidad gubernamental estatal de otra jurisdicción o federal, que haya provisto beneficios a un alimentista o a la que un alimentista haya cedido sus derechos de alimentos y este haya suministrado los mismos. En estas últimas circunstancias la entidad gubernamental, estatal o federal, podrá subrogarse en los derechos del alimentista y reclamar al alimentante el costo de los beneficios provistos, más los intereses y gastos legales.[64]

Ahora bien, el Artículo 2 (7) define alimentos como sigue:

> **Es parte integral del derecho fundamental a la vida y a la subsistencia de la persona**. Se refiere a todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica según la posición social de la familia. También comprenden la educación e instrucción del alimentista menor de edad. Asimismo, se dispone que dicho término incluya los conceptos que de tiempo en tiempo sean establecidos o adoptados por las leyes federales y estatales que rigen sobre el particular.[65] Énfasis suplido.

En el inciso 27 del referido artículo se indica que se considera un menor toda persona natural con una edad inferior a la

---

[60] Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501, Exposición de Motivos.
[61] *Id.*
[62] *Id.*, Art. 3.
[63] *Id.*, Art. 2 (4). Reglamento Núm. 8529-2014, Art. 7 (3).
[64] *Id.*, Art. 2 (6). Reglamento Núm. 8529-2014, Art. 7 (4).
[65] *Id.*, Art. 2 (7). Reglamento Núm. 8529-2014, Art. 7 (5).

establecida en el Código Civil de Puerto Rico para propósito de mayoridad y que tiene derecho a recibir servicios de sustento de menores al amparo de esta Ley.[66] En lo que respecta a los deberes recíprocos, el Artículo 4 dispone que:

> Los padres e hijos, los cónyuges, los excónyuges y los parientes están obligados recíprocamente a ayudarse y sostenerse económicamente, según dispuesto en el Código Civil y en la jurisprudencia interpretativa. Los padres de un menor son responsables de su manutención y el tribunal o el Administrador podrá ordenarles pagar una suma justa y razonable por concepto de pensión alimentaria a tenor con el Artículo 19 de esta Ley.[67]

Acorde con esta legislación, se considera una orden de pensión alimentaria:

> Cualquier determinación, resolución, orden, mandamiento o sentencia para fijar, modificar, revisar o hacer efectivo el pago de una pensión por concepto de alimentos, plan o seguro médico, emitida a tenor con los Reglamentos y las Guías mandatorias para computar las pensiones alimentarias en Puerto Rico adoptadas al amparo de esta Ley y la legislación federal aplicable, por un Tribunal del Estado Libre Asociado de Puerto Rico, o mediante el procedimiento administrativo establecido en esta Ley [...].[68]

Así pues, la revisión de dicha orden de pensión alimentaria puede darse a través de:

> Nueva consideración o examen de la pensión que se efectúa cada tres (3) años luego de que fuera originalmente fijada o modificada o antes del término de tres (3) años previamente señalado, si cualquiera de las partes puede demostrar que ha ocurrido un cambio sustancial en las circunstancias de la persona custodia, de la persona no custodia o del menor alimentista.[69]

El Artículo 13 de la Ley aborda el procedimiento judicial expedito ante examinadores de pensiones. De acuerdo con el inciso (2):

> El Examinador [...] hará determinaciones de hecho y conclusiones de derecho y recomendará remedios a un juez del Tribunal de Primera Instancia, Sala Superior, en cualquier procedimiento referente a pensiones [alimentarias], [...].
> El Examinador tendrá autoridad para:

---

[66] *Id.*, Art. 2 (27). Reglamento Núm. 8529-2014, Art. 7 (28).
[67] *Id.*, Art. 4.
[68] *Id.*, Art. 2 (29). Reglamento Núm. 8529-2014, Art. 7 (29).
[69] *Id.*, Art. 2 (41).

[…]
(d) Recibir y evaluar la evidencia y rendir un informe al tribunal que contenga las determinaciones de hechos, conclusiones de derecho y sus recomendaciones referentes a fijar, modificar y hacer efectivas las órdenes de pensión alimenticia y establecer la filiación.[70]
[…]

Por su parte, el Artículo 18 (5) aborda lo relacionado a la vista en el procedimiento judicial expedito:

El informe de un Examinador incluirá determinaciones de hechos, conclusiones de derecho y recomendaciones sobre la pensión alimenticia, el cual será referido al Tribunal de Primera Instancia. El juez del Tribunal de Primera Instancia podrá hacer suyas las determinaciones, conclusiones y recomendaciones del Examinador o hacer sus propias determinaciones de hecho o conclusiones de derecho con o sin vista previa y emitir la orden, resolución o sentencia que corresponda, la cual será notificada al alimentante y alimentista o al Secretario de la Familia, según sea el caso. Toda orden, resolución o sentencia para fijar o modificar una pensión alimenticia o para asegurar la efectividad del pago de las pensiones alimenticias, establecida mediante el procedimiento expedito dispuesto en esta Ley tendrá, para todos los efectos de ley, la misma fuerza y efecto que una orden, resolución o sentencia establecida a través del procedimiento judicial ordinario.[71]

Por último, en lo que concierne a la determinación, revisión y modificación de la orden de pensión alimentaria conforme a las Guías Mandatorias, el Artículo 19 de la Ley indica el proceso a seguir.[72]

### D. Reglamento Núm. 8529-2014

Las Guías mandatorias para computar las pensiones alimentarias en Puerto Rico se emitió de conformidad con el Artículo 19 de la Ley Núm. 5-1986.[73] En su Artículo 7 (14) define gastos suplementarios como:

Gastos que tanto la persona custodia como la persona no custodia deben sufragar para satisfacer las necesidades del o de la alimentista, que no se contemplan en la pensión alimentaria básica. Incluye gastos de educación, **vivienda**, y gastos de salud no cubiertos por un plan de seguro médico. También

---

[70] *Id.*, Art. 13 (2)(d).
[71] *Id.*, Art. 18 (5).
[72] *Id.*, Art. 19.
[73] Guías mandatorias para computar las pensiones alimentarias en Puerto Rico, Reglamento Núm. 8529, 30 de octubre de 2014, Art. 2.

incluye los gastos por concepto de cuido del o de la alimentista, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio. Al momento de determinar los gastos suplementarios, el juzgador o la juzgadora deberá considerar no solo los gastos que efectivamente se pagaron, sino también aquellos que son necesarios sufragar para satisfacer todas las necesidades del o de la alimentista.[74] (Énfasis suplido).

Debido a lo anterior, existe la pensión alimentaria básica y la pensión alimentaria suplementaria. El Artículo 7 (30) define la pensión alimentaria básica como:

Cantidad monetaria que la persona no custodia debe proveer para el pago de gastos básicos en los que es necesario incurrir para la crianza del o de la alimentista. Los gastos básicos incluyen aquellos gastos por concepto de alimentación, servicios públicos o utilidades, transportación, entretenimiento, vestimenta, excepto gastos de uniforme.[75]

Por otro lado, define la pensión alimentaria suplementaria de la siguiente manera: "Cuantía que la persona no custodia debe destinar para pagar la parte proporcional que le corresponde por concepto de gastos suplementarios".[76] El Artículo 20 (1)(d) indica como se hace el cómputo de la pensión alimentaria suplementaria:

> [...]
> **Vivienda**: **Se toma en consideración la cantidad mensual que, en efecto, la persona custodia paga o tiene que pagar por concepto de renta o hipoteca de la vivienda en la cual residen los o las alimentistas, o cualquier cantidad que la persona custodia aporta o tiene que aportar por la vivienda en la que residen estos o estas**. La cantidad mensual se divide por el número de personas que residen en la vivienda para obtener una cantidad per cápita que se multiplica por el número de alimentistas para los o las cuales se está computando la pensión alimentaria. El resultado es la cuantía por la cual la persona custodia y la no custodia deberán responder proporcionalmente.
> El concepto vivienda incluye las cuotas de mantenimiento, pero, excluye los gastos relacionados con los servicios públicos o utilidades, el mantenimiento rutinario de la residencia para el uso y disfrute, mejoras, reparaciones, compra de mobiliario, derramas o cualquier otro gasto que no sea recurrente ni periódico.
> **En los casos en los que la persona custodia se mude a una nueva residencia por la cual deba pagar una renta o hipoteca mensual sustancialmente mayor a**

---

[74] *Id.*, Art. 7 (14).
[75] *Id.*, Art. 7 (30).
[76] *Id.*, Art. 7 (33).

**la renta o hipoteca que mensualmente pagaba o aportar una cantidad sustancialmente mayor a la que entregaba en la residencia anterior, el juzgador o la juzgadora, determinará la cantidad que se pagará por concepto de vivienda mensual para cada uno o una de los o las alimentistas**. Para el análisis de razonabilidad, se tomará en consideración: (a) la capacidad económica de las personas custodias y no custodias para absorber dicho incremento; (b) la cantidad que anteriormente se pagaba o aportaba por concepto de vivienda; (c) la cantidad que pagará o aportará la persona custodia en el nuevo hogar; (d) la cantidad per cápita que le correspondía al o a la alimentista, y la que le corresponde luego del cambio de residencia; (e) el estilo de vida familiar; (f) las circunstancias que motivaron la mudanza o el cambio de residencia; y (g) las circunstancias particulares del o de la alimentista y de las persona custodia y no custodia.[77]

[…]

### E. Deferencia Judicial

Las determinaciones hechas por los foros inferiores sobre la prueba recibida merecen gran deferencia de los foros revisores.[78] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[79] A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[80] Se puede preterir esta deferencia cuando el juzgador de hechos haya incurrido en pasión, prejuicio, parcialidad, error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[81] El nivel de pasión, prejuicio o parcialidad que hace falta demostrar para impugnar exitosamente las determinaciones del TPI sobre los hechos varía de caso a caso.[82] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación

---

[77] *Id.*, Art. 20 (1)(d).
[78] *Pueblo v. Pérez Núñez*, 208 DPR 511, 514 (2022).
[79] *Id.,* 529.
[80] S*ierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).
[81] *Id. Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996).
[82] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 775-776 (2013).

rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[83]

El Tribunal Supremo de Puerto Rico ha determinado que un juez incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[84] Por otro lado, un tribunal de justicia incurre en un abuso de discreción cuando el juez: (i) no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, los sopesa y calibra livianamente.[85] Cuando lo que se impugna es la adjudicación de credibilidad y la determinación de los hechos, la conducta, participación y expresiones del juez durante el proceso judicial serán los elementos que se tomarán en consideración para evaluar este incurrió en pasión, prejuicio o parcialidad.[86]

En el caso *Torres Pérez v. Colón García,* nuestro Alto Foro expresó:

> Donde se halla la médula del problema adjudicativo es cuando toca al juez dirimir conflictos en la prueba, decidir sobre probabilidades, descartar imposibles, hurgar más allá de los testimonios para encontrar las verdades que muchas veces se ocultan tras meras apariencias, suplir a base de sus propias experiencias y conocimientos de la vida aquellos hechos no aportados articuladamente por los testimonios, pero inescapables al proceso inductivo de su inteligencia.[87]

---

[83] *Pueblo v. Pérez Núñez, supra.*
[84] *Dávila Nieves v. Meléndez Marín, supra,* 782.
[85] *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*
[86] *Dávila Nieves v. Meléndez Marín, supra,* 776.
[87] *Torres Pérez v. Colón García,* 105 DPR 616, 623 (1977).

A luz de lo anterior, la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento de la persona testigo.[88] Recalcamos que, la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez a la prueba presentada.[89] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[90] No obstante, si la apreciación de la prueba no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la evaluación se distancie de la realidad fáctica o esta es inherentemente imposible o increíble tenemos la responsabilidad ineludible de intervenir.[91] Sin embargo, a pesar de que existe esta norma de deferencia judicial, también hemos indicado que, cuando las conclusiones de hecho del foro de instancia estén basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido.[92]

En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un

---

[88] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

[89] *Dávila Nieves v. Meléndez Marín, supra,* 771.

[90] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). *Trinidad v. Chade*, 153 DPR 280, 291 (2001).

[91] *Santiago Ortiz v. Real Legacy et al., supra. González Hernández v. González Hernández,* 181 DPR 746, 777 (2011).

[92] *González Hernández v. González Hernández, Id.*

craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[93]

**III**

La apelante acude ante nos mediante recurso de *Apelación* y esboza que el TPI erró al no imputar una partida de gasto suplementario, para el pago de la vivienda donde residen los menores alimentistas, en detrimento del mejor bienestar de estos, y demostrando la existencia de pasión, prejuicio, parcialidad o error manifiesto. El error alude al sopesar de la prueba que tuvo ante su consideración la EPA para establecer la pensión alimentaria final. Debido a que, la determinación de hecho impugnada se basa en la prueba testifical desfilada en la vista evidenciaria, y la credibilidad que esta le mereció al juez, la apelante presentó ante nosotros una exposición narrativa de la prueba.

El caso ante nos surge debido a la determinación realizada por el TPI respecto a una *Solicitud de Pensión Alimentaria* relacionada a tres (3) menores alimentistas. En un inicio, luego de una *Vista Sobre Fijación de Pensión Alimentaria* celebrada el 3 de junio de 2022, ese mismo día la EPA rindió un *Acta* en la cual se encontraba la siguiente determinación de hecho:

> 5. La residencia donde habita la promovente y los menores paga de $800.00 mensuales de renta. Residen allí 6 personas. Sin embargo, este gasto no fue considerado para el cómputo de la pensión alimenticia, ya que la promovente testificó que la vivienda la pagaba su esposo y ella ayudaba con el pago. No se presentó evidencia del pago de la vivienda y tampoco de la aportación realizada. La promovente alegó que su esposo le paga en efectivo, ella deposita el dinero en su cuenta y luego para la renta por ATH Móvil desde su teléfono. Indicó que intenta aportar $300.00 mensuales. La licenciada Rivera objetó que no se incluyera el gasto de vivienda. Se informó que luego de que se presentara la prueba de su aportación y la de su esposo, según los estados de cuenta y las transacciones registradas en ath móvil, así como el contrato de

---

[93] *González Hernández v. González Hernández, Id.*, 776. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002). *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).

arrendamiento podríamos evaluar la totalidad de la misma y hacer las recomendaciones que procedan.

Luego de varios trámites procesales, el 6 de marzo de 2023, se celebró la *Vista Final de Alimentos* ante la EPA. En la *Vista Final* testificó la apelante y el apelado. Consecuentemente, el 31 de marzo de 2023, la EPA rindió un *Informe de la Examinadora de Pensiones Alimentarias* en el cual se emitió la siguiente determinación de hecho:

> 9. La residencia donde habita la promovente y los menores paga un canon de arrendamiento. De acuerdo con el testimonio de la promovente, residen allí 6 personas. Sin embargo, este gasto no fue considerado para el cómputo de la pensión alimentaria, ya que la promovente testificó que la vivienda era un pago que se compartía con su esposo. **Aunque se presentaron recibos del pago de una vivienda, no se presentó evidencia de que el pago surgiera de un estado bancario suyo, sino de su esposo; tampoco de la aportación realizada por ella**. (Énfasis suplido).

Según surge del *Proyecto de Exposición Narrativa de la Prueba Oral*, la apelante declaró que el canon de arrendamiento de la vivienda era de $1,772.00 dólares, de los cuales, su esposo paga la mitad y ella la otra mitad.[94] Sin embargo, ante pregunta de la EPA al apelado sobre si existía alguna controversia, manifestaron que en la vista pasada la apelante había indicado que ella aportaba $772.00 dólares y su esposo el resto.[95] La EPA le indicó a la apelante que, ante su alegación de que paga la mitad del canon de arrendamiento, esto representaría una cantidad mayor a ochocientos y pico de dólares.[96] Entiéndase, la mitad del pago de los $1,772.00 dólares sería $886.00 dólares. Por tanto, subrayamos que el testimonio de la apelante fue inconsistente en cuanto a la cantidad de dinero que esta atestiguaba presuntamente aportaba para el canon de arrendamiento de la vivienda.

---

[94] *Proyecto de Exposición narrativa de la Prueba Oral,* a la pág. 2.
[95] *Id.*, pág. 3.
[96] *Id.*

Entonces, la EPA le preguntó a la apelante cuál era la cantidad que ella aportaba para el canon de arrendamiento, a lo que contestó $860.00 dólares.[97] A preguntas sobre el cambio en la cantidad, la apelante adujo a que se debía a que ahora pagaba el internet, pero que su aportación para el pago del canon de arrendamiento continuaba siendo $772.00 dólares. En la *Vista Final* como en el apéndice se presentaron seis recibos, este es el desglose de estos[98]:

1. 30 de septiembre (no se indica año): Visa XXXX-**3235**: $1,**701.45**[99]
2. 14 de noviembre (no se indica año): Visa XXXX-**3235**: $1,**995.49**
3. 1 de diciembre (no se indica año): Visa XXXX-**3235**: $1,**839.84**
4. (No se indica fecha): Visa XXXX-**8594**: $1,**984.00**
5. 4 de febrero de 2023: Visa XXXX-**0852**: $1,**836.09**
6. (No se indica fecha): Visa XXXX-**8594**: $1,**984.00**[100]

De los recibos antes mencionados, notamos varios detalles que nos merece la pena mencionar: (i) no pudimos constatar a qué año corresponden los primeros tres (3) recibos; (ii) no pudimos constar a qué fechas corresponden los recibos número cuatro (4) y seis (6); (iii) en lo que a fechas respecta, solo nos consta que el recibo número cinco (5) es del 4 de febrero de 2023; (iv) los primeros tres (3) pagos se realizaron con la tarjeta Visa 3235; (v) los pagos número cuatro (4) y seis (6), los cuales no tenemos forma de distinguir que sean dos (2) pagos separados, se realizaron con la tarjeta Visa 8594; (vi) por su parte, el pago número cinco (5) se realizó con una tercera tarjeta Visa 0852; y, (vii) a excepción de los recibos cuatro (4) y seis (6), que como ya mencionamos, no tenemos forma de constatar que correspondan a dos (2) pagos distintos, en los demás pagos varía la cantidad que fue pagada por razón del canon de arrendamiento de la vivienda. En torno a las distintas cantidades emitidas en los pagos, la apelante testificó, sin tener ante nos constancia de esto ser

---

[97] *Id.*
[98] *Id.*, págs. 3-4.
[99] No se presentó ningún recibo para el mes de octubre.
[100] Documento añadido como página 90 del apéndice a través de *Moción Informativa y en Solicitud de Añadir Documento al Apéndice* presentada ante esta Curia el 21 de julio de 2023.

así, que se debía a que le cobraban el pago del recogido de basura, del seguro, del *internet,* del agua y del *laundry.*

La EPA determinó que el recibo por la cantidad de $1,984.00 dólares correspondía al mes de enero, sin indicar a cuál año.[101] Además, surge que hubo una controversia sobre el recibo del mes de marzo (no se indica año), sobre si la cantidad era $1,843.00 o $2,045.00 dólares. Sin embargo, dicho recibo no se encuentra en el apéndice del recurso presentado ante nos.[102]

En lo que respecta a los números de las tarjetas Visas, la apelante testificó que las cuentas pertenecían a esta y a su esposo.[103] A preguntas sobre cuál pertenecía a cada uno, contestó que no recordaba el número de la de ella, pero que la de su esposo era la 3235.[104] Es decir, tres (3) de los recibos ante nuestra consideración corresponden a pagos emitidos desde la tarjeta del esposo de la apelante. La apelante testificó que de su tarjeta también se habían emitido pagos y que debía entenderse que era la 8594.[105] Destacamos que, existe un pago desde una tarjeta Visa 0852, quien la apelante testificó entiende pertenece a su esposo.[106]

Según surge del testimonio de la apelante, esta y su esposo no tenían cuentas conjuntas.[107] A preguntas de la EPA, contestó que los pagos se emitían de cualquiera de las dos (2) cuentas, ya fuera que él le pasara el dinero a ella o ella se los depositara a él.[108] Siguiendo esa línea de preguntas, testificó que las transferencias y/o depósitos se realizaban a través de *cash app* y/o depósito en el banco Fairwinds.[109] Destacamos que de la Vista Final no surge que

---

[101] *Proyecto de Exposición narrativa de la Prueba Oral,* a la pág. 4.
[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.,* pág. 5.
[107] *Id.*
[108] *Id.*
[109] *Id.*

se haya presentado evidencia de dichas transacciones en *cash app* o de los depósitos en el banco.

Acentuamos que la obligación de alimentar a los menores de edad se fundamenta en el derecho a la vida, configurado como un derecho inherente a la persona.[110] Cónsono con lo anterior, el derecho de alimentos de los menores alimentistas está revestido del más alto interés público.[111] Debido a ello, en la eventualidad que se perciba un conflicto entre intereses ajenos y el mejor interés de un menor de edad, se debe resolver a favor del menor alimentista.[112]

La obligación general de proveer alimentos entre parientes se encuentra regulada por los Artículos 653 al 678 del Código Civil[113], y por la Ley Núm. 5-1986.[114] Destacamos que la pensión alimentaria provisional es una temporera, establecida para cubrir las necesidades de los menores alimentistas hasta tanto la pensión alimentaria final sea dilucidada.[115] Quiérase decir, que el ejercicio evaluativo a realizarse para determinar el monto a ser pagado como pensión alimentaria final es separado del efectuado para la pensión alimentaria provisionalmente ya impuesta.

La apelante nos invita a concluir que su testimonio no fue impugnado, sin embargo, un estudio del expediente en su totalidad, incluyendo el Proyecto de Exposición Narrativa de la Prueba Oral revela que, peor aún, su testimonio tampoco fue creído. De los autos ante nos, se desprende que la EPA se encargó de establecer que, de la prueba desfilada, no le mereció credibilidad el testimonio y los documentos presentados por la apelante. Por su parte, a pesar de que la apelante asevera que la EPA cometió un erró al no imputar una partida de gasto suplementario para el pago de la vivienda

---

[110] Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, Art. 3.
[111] *Id.*
[112] *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 651 (2016). *Ortiz v. Meléndez,* 164 DPR 16, 28 (2005).
[113] 31 LPRA secs. 7531-7574, Art. 653-678.
[114] 8 LPRA sec. 501 *et seq.*
[115] 8 LPRA sec. 501, Art. 17.

donde residen los menores alimentistas, no precisa sobre la prueba que sostiene su argumentación. Los recibos presentados en la *Vista Final,* y que se encuentran en el apéndice del recurso, no sostienen que la apelante pague parte del canon de arrendamiento de la vivienda en cuestión. Debemos reiterar que, la llamada deferencia judicial está predicada, como surgió en este caso, en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento de las personas testigos, quienes en este caso fueron la apelante y el apelado.[116] Sin embargo, esta Curia cuenta solamente con "récords mudos e inexpresivos", por lo que le debemos respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[117]

Es importante recalcar que la obligación de presentar evidencia recae sobre quien sostiene la alegación. En el caso ante nuestra consideración es la apelante quien sostiene que aporta una cantidad de dinero al pago del canon de arrendamiento de la vivienda. Debemos recordar que, los foros apelativos podremos intervenir con la apreciación del TPI, luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[118] Consecuentemente, las decisiones discrecionales que toma el TPI no serán revocadas, a menos que se demuestre que ese foro abusó de su discreción.[119] No contamos con elementos suficientes para determinar que hubiese intervenido pasión, prejuicio, parcialidad o error manifiesto respecto a la adjudicación de este asunto por el foro de primera instancia.

---

[116] *Santiago Ortiz v. Real Legacy et al.*, *supra*. *Meléndez Vega v. El Vocero de PR, supra*.
[117] *Autoridad de Acueductos y Alcantarillados de Puerto Rico, supra*. *Trinidad v. Chade, supra*.
[118] *Pueblo v. Pérez Núñez, supra*.
[119] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). *Pueblo v. Rivera Santiago, supra*.

De la prueba desfilada y cónsono a las determinaciones de hechos emitidas por la EPA y acogidas por el foro primario, no nos alberga duda de que, en efecto, los menores residen en una vivienda en la cual convive un total de seis (6) personas y que tiene un canon de arrendamiento. Con todo, este tribunal revisor luego de estudiar serenamente la totalidad del expediente ante nuestra consideración, incluyendo una revisión de los autos ante el TPI en el SUMAC, juzgamos que el foro primario no incidió al determinar no incluir una partida por concepto de gasto de vivienda al momento de establecer la pensión alimentaria. Razonamos que, cónsono al testimonio ofrecido por la señora Cruz Merced, incluyendo las preguntas realizadas por la propia EPA, no logró establecer que esta tuviese responsabilidad económica sobre el pago de la vivienda donde residen los menores alimentistas. Es harto conocido que los alimentos incluyen el concepto vivienda. Ahora bien, de determinarse que existe una necesidad de vivienda para un menor y para cubrir dicha necesidad hay que incurrir en un gasto, el Tribunal viene obligado a incluir una partida para cubrirla como parte de la pensión alimentaria.

Ahora bien, no debemos pasar por alto que los tribunales, son tribunales de prueba, no de meras alegaciones, y que, para que proceda el establecimiento de una partida de dinero por concepto de pensión alimentaria suplementaria para cubrir el gasto de vivienda, debió probarse a satisfacción del tribunal. Es decir, debía establecerse mediante prueba creíble que, en efecto, la señora Cruz Merced era responsable de pagar una suma de dinero mensual -o con alguna frecuencia- pero de manera específica. Sostenemos que, la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió, depende en gran medida de la exposición del juez a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento de la persona testigo mientras ofrece su testimonio

y escuchar su voz.[120] Como es sabido, el TPI está en mejor posición que esta Curia para llevar a cabo esta importante tarea judicial.[121] Forzoso es concluir que la apelante no pudo probarlo durante la vista probatoria. Concluimos que, conforme al curso decisorio del foro primario, la apelante no pudo demostrar lo anterior. Esto quedó evidenciado en la vista de pensión alimentaria provisional, pero, fatalmente, y en lo atinente, tampoco lo logró en la *Vista Final*. Es por todo lo anterior que cabe *confirmar* la *Sentencia* apelada.

Recordemos que, nuestro trasfondo doctrinario recae en que, nuestro sistema judicial es uno adversativo de derecho rogado que descansa en la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de la pureza de los procesos, y de que la verdad siempre aflore salga a relucir.[122]

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[120] *Dávila Nieves v. Meléndez Marín, supra.*
[121] *Id.*
[122] *Fundación Surfrider y otros v. ARPe,* 178 DPR 563, 585 (2010).